## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Case No. 11-1106 (RJL) |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) ) ) |
| Defendant. | ) ) |

**FILED**

MAR 18 2015

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION

(March 17, 2015) [# 27]

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW" or "plaintiff") moved to recover $25,922.12 in attorney's fees and costs pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E)(i), and Federal Rule of Civil Procedure 54(d) against defendant United States Department of Justice ("DOJ" or "defendant"). *See* Pl.'s Mot. for an Award of Att'ys' Fees and Costs ("Pl.'s Mot.") [Dkt. #27]. In February 2011, plaintiff submitted a FOIA request seeking records regarding the government's investigation of the late Congressman John Murtha (D-PA) and his associates. Compl. ¶ 1 [Dkt. #1]. In the months following the commencement of this lawsuit, the defendant released certain previously withheld documents, prompting plaintiff's claim that it was both eligible for, and entitled to, the attorneys' fees and litigation costs sought in the instant motion. *See generally* Mem. in Supp. of Pl.'s Mot.

1

for Award of Att'ys' Fees and Costs ("Pl.'s Mem.") [Dkt. #27-1].  For the reasons set forth below, plaintiff's motion is DENIED.

## BACKGROUND

Plaintiff is a non-profit corporation "committed to protecting the rights of citizens to be informed about the activities of government officials." Compl. ¶ 3.  To advance this credo, plaintiff seeks to disseminate "information about public officials and their actions" in order to inform public discourse. Compl. ¶ 3.  This case stems from plaintiff's efforts to obtain investigatory records concerning former Congressman John Murtha ("Murtha") and his associates. *See* Compl. ¶ 1.  A longtime "champion of earmarks," Congressman Murtha was dubbed by some the "King of Pork" for a career spent doling out billions in federal money to fund lawmakers' "pet projects." *See* Pl.'s Mem. at 2-3.  Murtha's largesse, however, proved to be his downfall.  As a result of his brand of pork-barrel politics, the Congressman, and various of his associates, fell under the scrutiny of both the DOJ and the Office of Congressional Ethics.  This led to several high-profile investigations into, among others, former Murtha aide Paul Magliocchetti, Murtha associates William and Ronald Kuchera, and Murtha protégé Rep. Peter J. Visclosky (D-Ind.).  In addition, the FBI and DOJ investigated several corporate entities alleged to have received millions in federal earmarks at the Congressman's behest, including Kuchera Industries and Concurrent Technologies. *See* Pl.'s Mem. at 2-3.  These investigations bore fruit.  Although the Congressman, who died in 2010, was never indicted, several of his associates were charged with criminal conduct.  In 2009, for example, Richard Ianiere, the former CEO Coherent Systems International Corporation, a

defense contractor with ties to the Congressman, pled guilty to accepting kickbacks. Pl.'s

Mot. Ex. D [Dkt. #27-2]. In 2011, Paul Magliocchetti received a 27-month prison

sentence for illegally funneling campaign contributions to candidates and political action

committees. Pl.'s Mot. Ex. C [Dkt. #27-2]. And in 2013, William and Ronald Kuchera,

who owned and managed Kuchera Defense Systems, pled guilty to federal fraud and

conspiracy charges. Pl.'s Mot. Ex. D.

On February 7, 2011, in the wake of these highly publicized investigations,

plaintiff sent FOIA requests to the FBI, the DOJ Criminal Division, and the Executive

Office for United States Attorneys ("EOUSA") seeking: "witness statements,

investigation reports, prosecution memoranda, and [FBI] 302 reports . . . related to

several investigations in which the late Rep. John Murtha (D-PA) is named or otherwise

identified." Pl.'s Mot. Ex. E [Dkt #27-2]; Decl. of David Hardy ("Hardy Decl.") ¶ 5

[Dkt. #31-1]. The FBI promptly acknowledged plaintiff's request and stated, in a letter

dated February 10, 2011, that it was searching for responsive records. Hardy Decl. ¶ 6;

Def.'s Opp'n to Pl.'s Mot. for Att'ys' Fees ("Def.'s Opp'n"), Ex. B [Dkt. #31-2]. The

EOUSA and the DOJ Criminal Division followed suit, confirming receipt of plaintiff's

requests by letters dated February 14, 2011 and February 16, 2011, respectively. *See*

Compl. ¶¶ 13, 21.

On March 1, 2011, less than a month after plaintiff's request, the FBI informed

plaintiff that it was withholding the requested records pursuant to 5 U.S.C. §

552(b)(7)(A) ("Exemption 7(A)"), which shields from disclosure records that could

reasonably be expected to interfere with ongoing enforcement proceedings.[1] *See* Compl. ¶ 16; Hardy Decl. ¶ 7; Def.'s Opp'n Ex. C [Dkt. #31-2]. Plaintiff appealed the denial of its request through the FBI's administrative appeals process. Compl. ¶ 17; Hardy Decl. ¶ 8; Def.'s Opp'n Ex. D [Dkt. #31-2]. However, on June 16, 2011, before any administrative decision was rendered, plaintiff commenced the instant action to enforce its requests. *See generally* Compl.

In early September 2011, after portions of the investigations pertaining to Congressman Murtha closed, the FBI determined that FOIA Exemption 7(A) no longer applied to all of the requested records. Hardy Decl. ¶ 12. Indeed, a review of pertinent records revealed that Congressman Murtha "was a main subject" in certain responsive files and merely a "cross-reference"—or collateral party—in the files of third party subjects. Hardy Decl. ¶ 12. Although the FBI was able to segregate certain information in Congressman Murtha's main investigative file for production, it continued to withhold portions of "cross-reference files" that "could reasonably be expected to interfere with ongoing criminal investigations of other third parties." Hardy Decl. ¶ 12.

On October 14, 2011, after reviewing 124 pages of responsive material, the FBI released to plaintiff 4 pages in full, withheld 4 pages in full, and released 116 pages in part. Hardy Decl. ¶ 13; Def.'s Opp'n Ex. G [Dkt. #31-2]. On November 14, 2011,

---

[1] FOIA exemption 7(A) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Exemption 7(A) reflects Congress's recognition that "law enforcement agencies ha[ve] legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it [comes] time to present their case." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978).

following a further review of its files, the FBI made a second release of documents. Hardy Decl. ¶ 14; Def.'s Opp'n Ex. H [Dkt. #31-2]. Of the 142 pages examined during this iteration of its review, the FBI released to plaintiff 6 pages in full, withheld 20 pages of duplicate materials, and released 116 pages in part. Hardy Decl. ¶ 14; Def.'s Opp'n Ex. H. The FBI's review continued into early 2012. On January 27, 2012, after reviewing 194 pages of responsive records, the FBI notified plaintiff of its decision to withhold all 194 pages in full under a kaleidoscope of FOIA exemptions. Hardy Decl. ¶ 15; Def.'s Opp'n Ex. I [Dkt. #31-2]. That same day, however, the FBI released 50 pages in part of material that had been referred by the DOJ Criminal Division for review. Hardy Decl. ¶ 16; Def.'s Opp'n Ex. J [Dkt. #31-2].

Unsatisfied with the FBI's production, plaintiff challenged the FBI's claimed withholdings on 200 pages of material. *See* Decl. of Anne L. Weismann ("Weismann Decl.") ¶ 10 [Dkt. #27-3]. Following a June 2012 conference between the parties, the FBI furnished "further detail about its search and the steps it took to determine if documents should be exempt under FOIA exemption 7(A)." Weismann Decl. ¶ 10. Plaintiff was not, however, satisfied, and continued to contest certain of defendant's claimed exemptions. *See* Weissman Decl. ¶¶12-13. As a result of their ongoing negotiations, on or about January 11, 2013, the FBI made another discretionary release of information, identifying previously redacted public sources on eight pages of material. Hardy Decl. ¶ 17. In an effort to resolve the remaining issues, the parties entered mediation. *See* Order of Sept. 13, 2012 [Dkt. #18]. After mediation, the FBI released an additional phrase on one page of material. Hardy Decl. ¶ 18.

Neither the EOUSA nor the DOJ Criminal Division directly produced documents to plaintiff.  Weismann Decl. ¶ 5.  The Criminal Division advised plaintiff in July 2012 that it had located only one responsive document, which it withheld in full pursuant to various FOIA exemptions.  Weisman Decl. ¶ 5.   In December 2012, the EOUSA advised plaintiff that it had completed its search for responsive documents, but declined to produce any materials, citing numerous FOIA exemptions.  Weisman Decl. ¶¶ 7-8. Plaintiff does not contest any of these asserted withholdings.  *See* Pl.'s Mem. at 9. Rather, the sole issue before this Court is plaintiff's motion for the $24,922.12 in attorneys' fees and the $450.00 in litigation costs it purportedly incurred during the pendency of this matter.  *See generally* Pl.'s Mem.

## ANALYSIS

### A. Legal Standard

FOIA permits courts to "assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case . . . in which the complainant has substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i).  Attorney's fees are discretionary, and are *not* designed as a "reward for any litigant who successfully forces the government to disclose information it wished to withhold."  *Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 711, 715 (D.C. Cir. 1977).  They instead serve "a more limited purpose [of] remov[ing] the incentive for administrative resistance to disclosure requests based not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation."  *Id.* at 711.

In keeping with this dictate, a plaintiff seeking attorney's fees and costs must satisfy a two-part inquiry. *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1495 (D.C. Cir. 1984). A plaintiff must show first that it is "eligible" for an award and second, that it is "entitled" to the requested relief. *Id.*; *accord McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 710 (D.C. Cir. 2014); *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011). Eligibility requires a showing that the plaintiff "substantially prevailed" in the underlying FOIA litigation either by procuring a favorable court order, or by causing the voluntary release of responsive records. *See* 5 U.S.C. § 552(a)(4)(E)(ii). If the plaintiff is eligible, the Court then determines whether, notwithstanding its eligibility, the "plaintiff *should* receive fees." *Brayton*, 641 F.3d at 524. At that juncture, the Court assesses four factors: "(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." *Davy v. CIA*, 550 F.3d 1155, 1159 (D.C. Cir. 2008) (citing *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1093-94 (D.C. Cir. 1992)). Unfortunately for plaintiff, for the following reasons, I find that it is statutorily ineligible for an award of attorney's fees and litigation costs, and therefore do not address its entitlement to such relief.

## B. Eligibility for Attorney's Fees and Costs

Under FOIA, a plaintiff is eligible for attorney's fees if it "substantially prevailed" in its request for records. 5 U.S.C. § 552(a)(4)(E)(ii). Although a plaintiff certainly prevails if it receives "a judicial order, or an enforceable written agreement or consent

decree," mandating disclosure, the Court's imprimatur is by no means essential. *See* 5 U.S.C. § 552(a)(4)(E)(ii)(I).  Under the so-called "catalyst theory" of recovery, a plaintiff may be eligible for attorney's fees in the absence of a favorable judgment on the merits if its actions effectuated "a voluntary or unilateral change in position by the agency."  5 U.S.C. § 552(a)(4)(E)(ii)(II).  The key question under the catalyst theory is whether "the institution and prosecution of the litigation *cause[d]* the agency to release the documents obtained during the pendency of the litigation." *Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1981) (emphasis added); *see Davis v. U.S. Dep't of Justice*, 610 F.3d 750, 752 (D.C. Cir. 2010) (under the catalyst theory, "plaintiffs [are] eligible for a fee award if the lawsuit substantially caused the agency to release the requested records").

Recovery under the catalyst theory thus turns on causation. *See Weisberg*, 745 F.2d at 1496; *Cox v. U.S. Dep't of Justice*, 601 F.2d 1, 6 (D.C. Cir. 1979) ("[T]he party seeking such fees in the absence of a court order must show that . . . a causal nexus exists between that action and the agency's surrender of the information.").  The "mere filing of the complaint and subsequent release of documents," without more, "is insufficient to establish causation." *Weisberg*, 745 F.2d at 1496.  Indeed, to prevent plaintiffs from being the beneficiaries of purely extrinsic factors, courts are directed to look at the circumstances surrounding disclosure.  When disclosure is triggered by events unrelated to the pending lawsuit, the causal nexus is missing and the plaintiff cannot be deemed a "prevailing party." *See Pyramid Lake Paiute Tribe of Indians v. U.S. Dep't of Justice*, 750 F.2d 117, 119-21 (D.C. Cir. 1984) (holding that plaintiff was ineligible for attorney's

8

fees because "[t]he series of events . . . [did] not even show a causal nexus between the lawsuit and [the disclosure]"); *see also Church of Scientology of Cal.*, 653 F.2d at 588 (finding that causation does not inhere when "an unavoidable delay accompanied by due diligence in the administrative process was the actual reason for the agency's failure to respond to a request" (internal citations omitted)). Eligibility instead attaches only when the lawsuit begets disclosure.

In the absence of Court-ordered disclosure, plaintiff here seeks to recover under the catalyst theory of eligibility and invites the Court to infer causation from the timing of disclosure. *See* Pl.'s Mem. at 12-13. Such an inference would be improper. Plaintiff's argument rests almost entirely on the time between the commencement of its suit in June 2011 and the FBI's first release of documents in October 2011. Although the time between the plaintiff's initiation of this lawsuit and the agency's release of responsive records is indeed a salient factor in the Court's analysis, it is by no means dispositive evidence of causation. *See Pub. Law Educ. Inst. v. U.S. Dep't of Justice,* 744 F.2d 181, 184 n.5 (D.C. Cir. 1984) ("While the temporal relation between an FOIA action and the release of documents may be taken into account in determining the existence *vel non* of a causal nexus, timing, in itself or in conjunction with any other particular factor, does not establish causation as a matter of law."). The sole question is whether plaintiff's lawsuit was *necessary* for its attainment of the requested documents. *Weisberg,* 745 F.2d at 1496. In this instance, it plainly was not.

At the time of plaintiff's FOIA request, the FBI was engaged in numerous investigations involving Congressman Murtha. As plaintiff readily acknowledges, these

Case 1:11-cv-01106-RJL   Document 34   Filed 03/18/15   Page 10 of 13

investigations delved into several individuals with ties to the late Congressman, including Murtha "aide-turned-defense lobbyist" Paul Magliocchetti, Richard Ianiere, the Kuchera brothers, and "Murtha protégé Rep. Peter J. Visclosky." *See* Pl.'s Mem. at 2. Several corporate entities with connections to Congressman Murtha were likewise implicated, including Kuchera Industries, a "company that Murtha had helped grow with more than $100 million in military contracts and earmarks," the PMA Group, a lobbying entity from which Congressman Murtha allegedly "collected $2.37 million," and "Mountaintop Technologies," yet another purported recipient of Congressman Murtha's fiscal largesse. *See* Pl.'s Mem. at 2-3. When plaintiff filed a FOIA request in February 2011 seeking records from the various investigations concerning the Congressman, the FBI found that "segregation of John Murtha's information was not possible without negatively impacting the [other] pending investigations." *See* Hardy Decl. ¶ 7. To prevent disclosure of investigative materials that, if made public, may have adversely affected pending investigations into Congressman Murtha's associates, the FBI asserted Exemption 7(A) to shield the requested documents from disclosure. *See* Hardy Decl. ¶ 7.[2]

Exemption 7(A) is inherently "temporal in nature" and expires when disclosure no longer interferes with active law enforcement proceedings. *CREW v. U.S. Dep't of Justice*, 746 F.3d 1082, 1097 (D.C. Cir. 2014) (citing *Robbins Tire*, 437 U.S. at 230-32).

---

[2] Plaintiff argues that defendant's invocation of Exemption 7(A) is "nonsensical" because Congressman Murtha died twenty months before the FBI began releasing documents in October 2011. Pl.'s Reply Mem. in Supp. of Pl.'s Mot. for Award of Att'ys' Fees and Costs ("Pl.'s Reply") at 2-3 [Dkt. # 32]. I disagree. Because the late Congressman's activities were relevant to several active investigations, the FBI had a plausible basis for denying, in the first instance, a request for records that could adversely affect other ongoing cases.

That was the case here. When portions of the investigations pertaining to Congressman Murtha closed subsequent to the filing of plaintiff's action, the FBI revised its stance, and determined that Exemption 7(A) no longer shielded *all* investigative records encompassed by plaintiff's request. *See* Hardy Decl. ¶ 12. Shortly thereafter, the FBI began to review, segregate, and produce non-exempt records responsive to plaintiff's request. *See* Hardy Decl. ¶ 12. It is abundantly clear that this disclosure was not caused by plaintiff's litigation. *See* Hardy Decl. ¶¶ 13-16, 19. It resulted instead from the closure of certain investigations during the pendency of the lawsuit.[3] As such, plaintiff did not "substantially prevail" in its request of records from the FBI.[4]

Plaintiff's claim that it "substantially prevailed" when, months after the

---

[3] Nor can it be said that the FBI's decision to release additional morsels of information on nine pages of previously redacted material was *caused by* plaintiff's suit. Defendant contends, and the Court agrees, that these additional productions were made as part of a good faith effort to settle the case, and were not an attempt to preempt an adverse judicial ruling. This is borne out in the record. These releases were made in the months after litigation commenced, in the midst of protracted negotiations, and in the absence of any dispositive motions. *See* Hardy Decl. ¶¶ 17-18. Because plaintiff has failed to demonstrate how these releases are anything more than tenuously related to its suit, I find that plaintiff does not meet the threshold standard for eligibility.

[4] The cases plaintiff cites in support of its position are inapposite. In each of these cases, unlike in the instant case, disclosure was directly attributable to litigation. Plaintiff relies for example on *Electronic Privacy Information Center v. United States Department of Homeland Security*, 892 F. Supp. 2d 28 (D.D.C. 2012) for the proposition that a plaintiff is eligible for a fee award "based on the agency's post-filing releases made in multiple stages." *See* Pl.'s Mem. at 15. There, the plaintiff was found to be eligible for attorney's fees after the defendant undertook a post-filing review of its records specifically to "narrow the issues for judicial review." *Elec. Privacy Info. Ctr.*, 892 F. Supp. at 37. Similarly, in *Judicial Watch, Inc. v. United States Department of Justice*, 878 F. Supp. 2d 225 (D.D.C. 2012), on which plaintiff also relies, the court granted plaintiff's request for attorney's fees because the defendant's disclosure was made solely to "prepar[e] [its] Motion for Summary Judgment in [the] case." *Id.* at 232. Here, however, the defendant's release of documents was neither an attempt to streamline the issues for judicial review nor related to the preparation of dispositive motions. To the contrary, the documents were released because of extrinsic circumstances: the conclusion of certain ongoing investigations.

commencement of this lawsuit, the FBI provided more fulsome explanations for certain

of its withholdings is similarly unavailing. *See* Pl.'s Mem. at 14. Indeed, plaintiff cites

no authority for the proposition that the FBI's "clarification" of certain claimed

exemptions renders it a "substantially prevailing" party under 5 U.S.C. § 552(a)(4)(E)(i).

The *sin quo non* of eligibility is the release of tangible records. *See Church of*

*Scientology of Cal.*, 653 F.2d at 587 (noting that a plaintiff substantially prevails if the

litigation "cause[d] the agency to release the *documents* obtained during the pendency of

the litigation" (emphasis added)). A party simply does not "prevail" by failing to obtain

the requested records. As such, the FBI's release of information regarding the reasons for

its withholdings does not meet the litmus test for eligibility. Plaintiff's argument,

moreover, that it "substantially prevailed" by causing the EOUSA and the DOJ Criminal

Division to process, and issue final responses to, its FOIA requests fails for the same

reason. *See* Pl.'s Mem. at 14. Even if plaintiff were to adduce evidence that its lawsuit

catalyzed the agencies' responses[5]—which it has not—plaintiff's argument fails for the

separate reason that neither request bore any tangible fruit. In both instances, the

EOUSA and the DOJ Criminal Division declined to release even a single responsive

document. FOIA does not reward Pyrrhic victories and neither, for the reasons discussed

---

[5] Plaintiff argues that prior to the commencement of its lawsuit, the DOJ Criminal Division and the EOUSA offered only "hollow promises to conduct searches at some unidentified time for responsive documents." *See* Pl.'s Mem. at 12. Rather than demonstrate *how* the initiation of its lawsuit catalyzed the agencies' final responses, plaintiff makes the conclusory statement that these responses were "motivated by CREW filing a lawsuit." *See* Pl.'s Mem. at 12-13. It is well-settled that vague assertions of *post hoc, ergo propter hoc* are insufficient and, accordingly, this Court will not credit them as evidence of the causation needed to establish eligibility. *See Pub. Law Educ. Inst.*, 744 F.2d at 183 ("While it is clear that a court order compelling disclosure is not a prerequisite for an award, it is also clear that more than *post hoc, ergo propter hoc* must be shown." (footnotes omitted)).

above, will this Court.

The inquiry ends, as it must, here.  Because plaintiff has not substantially prevailed, there is no need to consider whether the Court should exercise its discretion to award reasonable attorney's fees and expenses.  *See Pub. Law Educ. Inst.*, 744 F.2d at 184 ("Since [plaintiff] is not eligible for an award of attorney's fees and litigation expenses, we have no occasion to comment on the factors that would bear on [plaintiff's] entitlement.").

## CONCLUSION

Thus, for all the foregoing reasons, the Court DENIES plaintiff's Motion for Attorney's Fees and Costs [#27].  An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge